**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
BOARD OF TRUSTEES OF THE
UFCW LOCAL 174 PENSION FUND,
                              Plaintiff,         **REPORT AND**
                                                       **RECOMMENDATION**
       - against -

                                                     **CV 08-2325 (ARR) (JO)**
JERRY WWHS CO., INC.,
                              Defendant.
------------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

       Plaintiff Board of Trustees of the UFCW Local 174 Pension Fund (the "Trustees"), commenced this action on June 12, 2008 against defendant Jerry WWHS Co., Inc. ("Jerry") seeking certain relief associated with Jerry's withdrawal from an agreement to make contributions to the UFCW Local 174 Pension Fund (the Fund"). Docket Entry ("DE") 1 (Complaint). Jerry never responded to the Complaint, and the Trustees therefore moved for default judgment. DE 3. By order dated October 20, 2008 the Honorable Allyne R. Ross, United States District Judge, referred the matter to me for a report and recommendation. I now make my report and, for the reasons set forth below, respectfully recommend that the court enter an order awarding the plaintiffs judgment in the total amount of $322,580.15 (consisting of $306,705.00 in withdrawal liability; $14,590.15 in accrued interest; $935.00 in reasonable attorneys' fees; and $350.00 in other litigation costs).

I.    <u>Background</u>

       The Fund is a multi-employer labor-management trust established and maintained pursuant to various collective bargaining agreements and trust agreements in accord with federal law. *See* Complaint ¶ 2; DE 8-2 (Declaration of [Fund actuary] David B. Reid in Support of

Plaintiff's Motion for Judgment by Default Against Defendant Jerry WWHS Co., Inc.) ("Reid Dec.") ¶ 2. It is also a defined benefit pension plan within the meaning of Section 3(37)(A) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(37)(A). Complaint ¶ 2. The Trustees allege that the Fund is governed by an Amended and Restated Agreement and Declaration of Trust (the "Trust Agreement"). Complaint ¶ 6. That Trust Agreement requires Jerry to make contributions to the Fund in accordance with the provisions of a separate collective bargaining agreement ("CBA") to which Jerry is allegedly a party. *Id*.

Defendant Jerry is a New York corporation engaged in the wholesale meat-packing business. Complaint ¶ 3. Jerry made contributions to the Fund until June 2007. Complaint ¶ 7. At that time, the Trustees contend, Jerry "completely withdrew from the Fund." *Id*.; *but see* DE 8 (Memorandum of Law in Support of Plaintiff's Motion for a Default Judgment) (Memo.) at 1 (asserting that the withdrawal occurred in "June 2006"). The Trustees go on to allege that as a result of perceived withdrawal, Jerry incurred certain liability pursuant to ERISA. Complaint ¶ 7; *see generally* 29 U.S.C. § 1381, *et seq*. (the Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA"), which amended ERISA). Pursuant to the relevant provisions of ERISA and the MPPAA, the Fund notified Jerry of the perceived withdrawal in a letter dated September 18, 2007, in which they also made a demand that Jerry pay withdrawal liability in the amount of $306,705.00 in equal quarterly instalments of $4,350.00. Complaint ¶¶ 8-9 & Ex. A (the "Demand Letter"). On December 20, 2007, the Trustees sent a further demand to Jerry, called the "Redetermination Letter," reiterating that Jerry had incurred withdrawal liability, and demanding the same quarterly payments as the previous letter, but this time asserting that "the period over which [Jerry] must make" such payments had become "infinite." Complaint ¶ 10;

2

*see also id*. Ex. B at 1.  By letter dated February 15, 2008 (the "Default Letter"), the Fund notified Jerry that it had not yet received the payment sought in the Demand Letter.  Complaint ¶ 12 & Ex. C.  Jerry made none of the payments that the Trustees demanded in connection with its withdrawal liability.  Complaint ¶ 13.

By operation of law, Jerry's failure either to make such payments on demand or to lodge an administrative challenge to the demand within 60 days of receiving the Default Letter placed Jerry in default, and entitled the Trustees to recover immediately the outstanding amount of withdrawal liability as well as accrued interest dating from November 17, 2008.  Complaint ¶ 14 (citing 29 U.S.C. § 1399(c)(5)).  In a letter dated May 7, 2008, the Fund demanded just such accelerated payment from Jerry.  Complaint ¶ 15 & Ex. D.  Jerry did not comply.  Complaint ¶ 16.

The Trustees filed the instant action on June 12, 2008, alleging that Jerry's failure to pay its withdrawal liability as demanded violated the terms of the Trust Agreement as well as the relevant provisions of ERISA.  Complaint ¶ 17.  The Trustees served the Complaint on Jerry on June 23, 2008. DE 2.  Jerry has never responded.  On August 6, 2008, the Trustees moved for a default judgment.  DE 3.  In support of their motion, the Trustees submitted a declaration from an actuary for a consulting firm that provides actuarial services to the Fund summarily attesting to his calculation of withdrawal liability and interest.  Reid Dec. ¶¶ 3-4.  They also submitted an affidavit by their counsel that provides billing records in support of their request for attorneys' fees and litigation costs.  DE 3 (Affidavit [of attorney Russell L Hirschhorn] for Judgment by Default) ("Hirschhorn Aff.").  The Clerk entered Jerry's default on the docket on August 15, 2008.  Judge Ross later referred the motion to me.  Order dated August 20, 2008.

3

Upon receiving the referral, I afforded the Trustees an opportunity to submit any additional written materials in support of their request for relief that they wished me to consider no later than September 10, 2008 (which deadline I later adjourned to September 25, 2008, at the Trustees' request); I further directed the Trustees to provide a copy of my order to Jerry within one week. Orders dated August 20 and September 11, 2008; *see also* DE 7 (letter requesting adjournment of deadline to accommodate the parties' attempts to negotiate a settlement). In response, the Trustees provided notice to Jerry as required, *see* DE 6, and took the opportunity to submit a memorandum of law (but not to submit any additional evidence). *See* DE 8. After the Trustees reported that their attempts to negotiate a settlement had failed, I afforded Jerry an opportunity to respond to the pending motion no later than October 23, 2008, by submitting any evidence or argument it wished me to consider. Order dated October 3, 2008. The Trustees so notified Jerry, *see* DE 10, but Jerry did not take advantage of that opportunity to be heard.

II.   Discussion

   A.   Default

When a defendant defaults, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); Fed. R. Civ. P. 8(b)(6). Even upon a defendant's default, however, the court must still determine whether the plaintiff has stated a cause of action. *Au Bon Pain*, 653 F.2d at 65. Once liability is established, the court must conduct an inquiry sufficient to establish damages to a "reasonable certainty." *Credit Lyonnais*, 183 F.3d at 155 (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Detailed

4

affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Credit Lyonnais*, 183 F.3d at 155.

B. <u>Liability</u>

As noted above, a defendant's default only suffices to establish well-pleaded factual allegations supporting a claim. On the other hand, "a default does not establish conclusory allegations." *Century 21 Real Estate, LLC v. Raritan Bay Realty, Ltd.*, 2008 WL 4190955, * 3 (E.D.N.Y. Sept. 3, 2008); *see Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971) (complaint must be well-pleaded and allege "specific acts" not mere conclusory and vague allegations). Accordingly, before they can secure a default judgment, the Trustees must establish, through the allegation of specific facts that Jerry's default serves to admit, every element of the claim for which they seek relief.

The allegations in the Complaint suffice to establish liability. Although the allegation that Jerry effected a complete withdrawal from the Fund is conclusory, and would not suffice to establish liability if the Trustees were seeking to recover based on the withdrawal itself, that is not the basis of the pending claim. Rather, the Trustees have established liability because they have sufficiently alleged, and by virtue of the default they have established, that Jerry was properly notified of their demand for withdrawal liability payment and failed either to make such payment or to take advantage of its statutory opportunity to challenge the demand.

If Jerry wished to dispute the Trustees' calculation of withdrawal liability, it was obliged to initiate arbitration proceedings within a specified time. 29 U.S.C. § 1401(a). Jerry having failed to do so, the amount that the Trustees demanded became due and owing, and the Trustees

5

were entitled to bring this civil action to recover that amount. 29 U.S.C. § 1401(b)(1). *See also Vacca v. Bridge Chrysler Jeep Dodge, Inc.*, 2008 WL 4426875, at *5-7 (E.D.N.Y. Sept. 4, 2008) (discussing the elements for liability under the MPPAA); *Trustees of the Local 531 Pension Plan v. Corner Distrib., Inc.*, 2008 WL 2687085, at *4 (E.D.N.Y. July 8, 2008) (same). The Trustees have sufficiently pleaded each element of liability on that basis. *See* Complaint ¶¶ 8-16. Moreover, despite ample opportunity to respond – not only to the Complaint, but also to the instant motion – Jerry has remained silent and has thereby admitted all of the plaintiffs' factual allegations. Accordingly, I respectfully recommend that the court find that the Trustees have established Jerry's liability on the sole claim in the Complaint.

C. Damages: Withdrawal Liability

The court need not hold a hearing on damages to determine the amount of Jerry's withdrawal liability. Although the record plainly does not suffice to support the calculation on which the Trustees rely – for example, that calculation assumes a specific amount as the unfunded value of vested benefits, *see* Reid Dec. Ex A, but provides no documentary support for that assumption – that lapse is of no moment. Jerry's liability arises from its failure to respond to the earlier demands that the Trustees sent; as a result of that failure, the amount of withdrawal liability that the Trustees demanded became due and owing as a matter of law. 29 U.S.C. § 1401(b)(1). Accordingly, Jerry has waived its right to contest the amount of withdrawal liability, and I therefore respectfully recommend that the court award the Trustees withdrawal liability in the amount of $306,705.00.

D. Accrued Interest

The Trustees also seek interest on the withdrawal liability, which is mandatory pursuant to ERISA, 29 U.S.C. § 1132(g)(2), and the MPPAA, 29 U.S.C. § 1399(c)(5).[1] They calculate that they are owed $15,149.68 in accrued interest. Specifically, their actuary applied an annual interest rate of 7.5 percent to a principal amount of $306,705.00 for the period from November 17, 2007 (60 days after the date of the Demand Letter) through August 4, 2008. Reid Aff. ¶ 4 & Ex. B. I conclude that the record does not support that calculation.

I have no quarrel with either the principal amount or the period for which the actuary calculated interest. The principal amount is properly based on the amount of Jerry's withdrawal liability. Moreover, the choice of a starting date for the accrual of interest is correct, as the applicable statute provides for such interest starting on the date of the first delinquent payment and further specifies that an employer must begin withdrawal liability payments within sixty days of the demand, notwithstanding any request for review of the amount demanded. 29 U.S.C. § 1399(c)(2), (5); *see also* 29 C.F.R. § 4219.32(d).

I disagree, however, with the actuary's assumption that the correct annual rate of interest is 7.5 percent. The applicable regulation provides that interest on withdrawal liability "shall be charged ... for each calendar quarter at an annual rate equal to the average quoted prime rate on short-term commercial loans for the fifteenth day of the month preceding the beginning of each calendar quarter," unless the Fund's rules specify a different rate. 29 C.F.R. § 4219.32(b).

---

[1] ERISA's mandatory damages provision applies to an employer's withdrawal liability under the MPPAA. *See* 29 U.S.C. § 1451(b); *Trustees of the Local 531 Pension Plan*, 2008 WL 2687085, at *5. In that regard, I note that ERISA also mandates an award of liquidated damages. 29 U.S.C. § 1132(g)(2). However, the Trustees have not sought such relief in either their Complaint or this motion, and I therefore I recommend against any such award. *See* Fed. R. Civ. P. 54(c).

7

Because the record does not include any information about the terms of the Fund, the court may look only to the regulatory interest rate in computing interest.[2] Unfortunately, just as they have not provided information about the Trust Agreement or the CBA, the Trustees have also inexplicably failed to provide the court with any information about the latter interest rate. As a result, it would be entirely appropriate for the court to conclude that the Trustees have failed to meet their burden and award no accrued interest. However, rather than punish the Fund's beneficiaries for the lapses of its fiduciaries and their counsel, I respectfully recommend that the court take notice of the regulatory rate in effect for the period at issue.

According to data published in the Federal Register and compiled by the Pension Benefit Guaranty Corporation, the annual interest rates for the relevant periods were as follows: 8.25 percent in the last quarter of 2007; 7.25 percent in the first quarter of 2008; 6.00 percent in the second quarter of 2008; and 5.00 percent in the second quarter of 2008. Overdue or Defaulted Withdrawal Liability, http://www.pbgc.gov/practitioners/interest-rates/content/hr1130.html#2008 (last visited March 19, 2009). Based on those published rates, I make the following calculation with respect to each calendar quarter for which the Trustees seek an award of accrued interest:

| Period | Days | Annual Rate | Interest on $306,705.00 |
| --- | --- | --- | --- |
| Nov. 17 - Dec. 31, 2007 | 45 | 8.25% | $3,119.57 |
| Jan. 1 - Mar. 31, 2008 | 91 | 7.25% | $5,528.65 |
| Apr. 1 - June 30, 2008 | 91 | 6.00% | $4,575.44 |
| July 1 - Aug 4, 2008 | 35 | 5.00% | $1,466.49 |
| TOTAL | | | $14,690.15 |

---

[2] Departing from the usual practice in similar cases in this court, the Trustees have not submitted copies of the relevant provisions of the Trust Agreement and the CBA – despite explicit and repeated directions to submit any evidence on which they wished to rely in seeking relief. *See* Order dated August 20, 2008; Order dated September 11, 2008. As a result, the record does not suffice to support an interest award based on the annual rate of 7.5 percent that they claim.

Based on those calculations, I respectfully recommend that the court award the Trustees accrued interest on Jerry's withdrawal liability in the amount of $14,690.15.

   E.   Fees And Costs

      1.   Attorneys' fees

The Trustees seek the reimbursement of their attorneys' fees in the amount of $2,327.00. Hirschhorn Aff. ¶ 6. An award of attorney's fees is mandatory under ERISA. *See* 29 U.S.C. § 1132(g)(2); *Trustees of Local 531 Pension Plan*, 2008 WL 2687085, at *5. They have submitted contemporaneous time records with their motion in compliance with *New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). DE 3-3.

Courts in this circuit assess such fee applications using the "lodestar method," under which a reasonable hourly rate is multiplied by a reasonable number of hours expended. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997); *King v. JCS Enterprises, Inc.*, 325 F. Supp. 2d 162, 166 (E.D.N.Y. 2004) (citing *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004); *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)). Although "[t]he meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness[,]" it has become so entrenched in the case law that its use is still permitted, if only as a convenient shorthand. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). I use the term here only for such ease of reference, and without the artificial limitations that the court rejected in *Arbor Hill*. *See id*. at 190 n.4.

District courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award. *Fox Indus., Inc. v. Gurovich*, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005)

(quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). I therefore proceed to examine the reasonableness of both the hourly rates at which the plaintiffs' attorney seeks to be compensated and the number of billed hours for which the plaintiffs seek reimbursement.

The Trustees ask for their attorneys, and the support personnel who assisted them, to be reimbursed at the following hourly rates:

| Name | Position | Hourly rate |
|---|---|---|
| Russell Hirschhorn | Associate | $610 |
| Leah Laben | Associate | $425 |
| Kevin J. Pflug | Associate | $295 |
| Monique Leo | Legal Assistant | $185 |
| Shaira Nanwani | Legal Assistant | $160 |
| John G. Fleming | "Lit. Support" | $160 |

DE 3-3 (billing summary) at 4.

The Trustees, contrary to usual practice in this district, have provided no information about the experience or qualifications of the attorneys for whose work they seek reimbursement. The omission is particularly surprising in light of the fact that the hourly rates claimed by the attorneys – all of whom are associates – are all above even the most generous rates typically approved for partners working on similar cases in this district. *See*, *e.g.*, *La Barbera v. J & A Concrete Corp.*, 2008 WL 918244, at *2-3 (E.D.N.Y. April 1, 2008) (modifying magistrate judge's recommendation to award fees at an hourly rate of $210, and instead calculating fee based on an hourly rate of $275, based on attorney's "nearly 40 years' of practicing experience, which distinguishes him from more junior attorneys in similar cases").

The attorney who did the vast majority of the work at issue here (as discussed below) is an associate who graduated from law school only in 2006. Proskauer Rose LLP - Kevin J. Pflug, http://www.proskauer.com/lawyers_at_proskauer/atty_data/7212 (last visited March 19, 2009).

In light of cases in this district approving hourly rates for associates in the range of $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants, the hourly rates the attorneys and support staffers here seek to charge are excessive under the circumstances. *See Cho v. Koam Medical Services P.C.*, 524 F. Supp. 2d 202, 207 & n.4 (E.D.N.Y. 2007) (citing cases).

In *La Barbera v. Les Sub-Surface Plumbing, Inc.*, 2006 WL 3628024, at *8 (E.D.N.Y. Dec. 11, 2006), the court awarded a fee based on an hourly rate of $250 for the work of an associate with six years experience. In doing so it applied a "prevailing rate" analysis. However, as the court in *Arbor Hill* made clear – admittedly in the context of applying a different fee-shifting statute – the ultimate task in considering a reasonable hourly rate is to determine, under all of the circumstances, "the rate a paying client would be willing to pay." 522 F.3d at 190. In this context, I am persuaded that a paying client would be unwilling to pay the hourly rate of $295 for the services that attorney Pflug has rendered here, or even the $250 hourly rate approved in *Les Sub-Surface Plumbing*; such a client would certainly be unwilling to pay the extraordinarily higher rates the other associates in the case seek to charge. Of particular relevance to that determination is that plaintiffs in several of the many similar ERISA cases decided recently in this district have not even requested such high rates of reimbursement, but have instead asked for no more than $210 per hour. *See*, *e.g.*, *Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Dan Yant, Inc.*, 2007 WL 3036759, at *9 (E.D.N.Y. Oct. 16, 2007) (adopting recommendation in ERISA contributions case to accept as reasonable law firm partner's proposed hourly rate of $210); *Finkel v. Stan Electric Co.*, docket no. 06-CV-1315 (NG) (JO), Report and Recommendation at 12 (E.D.N.Y. Aug. 31, 2007) (recommendation in ERISA

contributions case – later adopted by district court – to accept as reasonable hourly rate of $200 proposed by attorney admitted to practice in 1999).

Although similarly experienced attorneys performing other kinds of work can and do command higher hourly rates, I see no reason why a paying client would agree to pay an associate an hourly rate of $295 or more for the kind of work at issue here, particularly where other specialists in the same kind of work who regularly practice in this district charge significantly less. Because I do not see any reason why a paying client would be willing to pay the attorneys and assistants here more than the amounts sought in prior similar cases, and because the record provides no reason to think that any attorney who worked on the case was anything other than a junior attorney, I recommend that the court base its fee award on an hourly rate of $175 for all three associates and $80 for each support staff member.

A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed, preferably through contemporaneous time records that describe with specificity the nature of the work done, the hours expended, and the dates. *New York State Ass'n for Retarded Children*, 711 F.2d at 1147-48. Inadequate documentation is grounds for reduction of a fee award. *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983); *Levy v. Powell*, 2005 WL 1719972, at *8 (E.D.N.Y. Jul. 22, 2005).

The Trustees have submitted their billing records, and while the hours charged are relatively modest, they are nevertheless somewhat excessive for the work accomplished. The Trustees seek reimbursement for a total of 6.7 hours of time charged by the associates as well as 1.5 hours ascribed to the work of support staff members. The bulk of the former is attributed to 5.85 hours that attorney Pflug spent drafting and revising the Complaint – a pleading that is

largely boilerplate and that omits information necessary to support some of the relief his clients seek. I respectfully recommend reducing the compensable time for those tasks to five hours. The remaining attorney time should not be compensated at all: the 15 minutes (at most) that attorney Hirschhorn spent reviewing the Complaint plainly added no value to the process and seems entirely unnecessary in light of the boilerplate nature of the pleading; the time that attorney Pflug spent "Review[ing] Order for Initial Pre-Trial Conference issued by the court[,]" DE 3-3 at 3, cites an order that the court never issued and therefore need never (and indeed could never) have been reviewed; and there is no indication that the time Laben spent reviewing an email from the Fund office had anything to do with the litigation of this case. As for the non-attorney time for which the Trustees seek reimbursement, most of it is devoted to administrative tasks within the attorneys' office rather than to support the litigation of the case itself; I recommend that the court reduce by half the hours of compensable time the Trustees request for the support staff members.

Based on the foregoing analysis, I conclude that the Trustees should be compensated for five hours of attorney work at an hourly rate of $175 and 0.75 hours of support work at a rate of $80. I therefore respectfully recommend that the court award attorneys' fees in the amount of $935.00.

        2.     <u>Other Litigation Costs</u>

The plaintiffs seek reimbursement of a total of $1,057.54 in costs, consisting of $1,050.00 in "filing fees" and $7.54 in unspecified "litigation support" costs. DE 3-3 at 4. The fee for filing a case in this court is $350.00, and the Trustees do not explain why their attorneys have charged them triple the actual cost for doing so in this case or why they would have paid such an

unduly inflated bill. At any rate, Jerry should only have to pay the amount the court actually charged. Moreover, in the absence of any explanation of the "litigation support" charges or any documentation that they were actually incurred for some expense related to this case, I recommend that the court deny that portion of the request. Accordingly, I respectfully recommend that the court award costs in the amount of $350.00.

III. Recommendation

For the reasons set forth above, I respectfully recommend that the court enter an order awarding the plaintiffs judgment in the total amount of $322,680.15 (consisting of $306,705.00 in withdrawal liability; $14,690.15 in accrued interest; $935.00 in reasonable attorneys' fees; and $350.00 in other litigation costs).

IV. Objections

I direct the plaintiffs to serve a copy of this Report and Recommendation on the defendant by certified mail, and to file proof of service with the court no later than March 23 2009. Any objections to this Report and Recommendation must be filed with the Clerk no later than April 6, 2009. Failure to file objections within this period waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Beverly v. Walker*, 118 F.3d 900 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52 (2d Cir. 1996).

**SO ORDERED.**

Dated: Brooklyn, New York
March 19, 2009

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge